### GREAT NORTHERN RY. CO. v. WOJTALA.

#### No. 9259.

Circuit Court of Appeals, Ninth Circuit.

June 11, 1940.

Rehearing Denied July 25, 1940.

T. B. Weir, W. L. Clift, and Harry P. Bennett, all of Helena, Mont., for appellant.

E. J. Stromnes, of Great Falls, Mont., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appellee recovered a judgment against appellant for personal injuries suffered while in appellant's employ, and appellant seeks to set the judgment aside.

Appellant maintains a shop for the repair of its cars. Some repairs are made outside the shop on tracks. In the shop are four tracks upon which the cars rest. The repairs to each car are made by a crew consisting of a carman and a helper. The carman is the helper's superior; an assistant car foreman is the carman's superior; the car foreman is the assistant's superior; and the shop superintendent is the car foreman's superior. The car being repaired by appellee at the time of his injury was a freight car, having vertical siding. The repair was the replacement of part of the vertical siding. The floor of the car was about three feet above the wooden floor of the shop, and the top of the car was about twelve feet above the floor of the shop. In replacing the siding it is necessary to use either a ladder or a scaffold to reach the upper ends of the siding.

Appellee is a carman, and on September 4, 1934, was directed to repair the car in question. Appellee directed his helper to work on one side of the car, and appellee proceeded to repair the other side. He removed the vertical siding, leaving a space about four feet wide from the floor of the car to the top of the car, and began to place new siding in the space. At about 3:30 p.m. he was on a ladder, working a little to the right side thereof, and had driven his chisel in the framework of the car, to use as a lever in forcing together some of the new siding. As he was applying pressure, a chip came out of the frame in which the chisel was imbedded, the chisel slipped, the ladder moved side-ways a little, and appellee fell to the floor of the shop and was injured.

On September 21, 1937, appellee filed this action in a state court in Montana, to recover for the injuries sustained. He alleged that appellant was negligent: (1) in ordering him to do the work he was doing with a ladder; (2) in failing to provide him with a reasonably safe place to do such work because the ladder did not provide him with a secure footing; (3) in failing to provide him with a scaffold; (4) in failing to have enough scaffolds on hand so that one would be available to him; and (5) in directing him to do the work he was doing with a ladder, which appellant knew or in the exercise of reasonable care should have known was unsafe equipment. The action was removed to the court below on appellant's petition. Appellant's demurrer to the complaint was overruled. Appellant by answer denied negligence on its part, and alleged as separate defenses: (1) that appellee assumed the risk of his employment; and (2) contributory negligence on the part of appellee. By reply, appellee denied both defenses.

Appellee testified that he began working for appellant in 1913, worked as a helper for the first two years, and had been a carman since that time; that on the day he was injured, Kopetski, the assistant car foreman, directed him to work on the car in question; that he looked for a scaffold but was unable to find one; that he then asked Kopetski for a scaffold and Kopetski directed him to work on a ladder until he (Kopetski) could find a scaffold; and that a scaffold was easier and safer to work on than on a ladder. On cross-examination, appellee testified that his helper had been using a scaffold all day, and that at the time of the injury, the helper was cleaning the floor around the car. Witness Espelien, a carpenter, testified for appellee, that he customarily used a scaffold in installing siding on buildings. Appellee then rested.

Appellant then moved for a non-suit which was denied. The witnesses for appellant included: Kopetski, its assistant car foreman; Sowa, its car foreman; Malenki, its shop superintendent; Johnson, a car foreman for another railroad; Newton, a general car foreman for still another railroad; Parker, a carman for appellant; and Parsons, a carman for appellant.

Kopetski denied that appellee requested a scaffold and that he had directed appellee to use a ladder. Kopetski further testified that he had never given instructions about the use of either ladder or scaffolds; that the sides of the cars were divided into halves which made four quarters of the car, and if repairs were to be made to a quarter or more, it was the custom to use scaffolds; that it was the custom for the carman to find a scaffold, but if he couldn't such carman was to ask Kopetski for one, and if Kopetski found that none was available, then the carman would discontinue work until there was one available. Malenki testified that he had instructed Sowa to use ladders on patchwork.

Sowa and Newton testified that a light repair was one which took less than 21 man-hours to complete and that if more time was required, the repair was classified as a heavy repair; that scaffolds were used on heavy repairs, and ladders used on light repairs to save time. Kopetski, Johnson, Newton and Malenki all testified that for patches of less than a quarter, it was the custom to use a ladder to save time, but for repairs of a quarter or more, it was the custom to use a scaffold. Parsons testified that it was the practice to use both scaffolds and ladders on patchwork, and that it was entirely up to the judgment of the carman as to which he used.

As to the safety of ladders and scaffolds, Parker, Parsons and Malenki testified that ladders were safer than scaffolds; Kopetski testified that ladders were as safe or safer than any other appliance; Johnson testified that with 2 men a scaffold was as safe as a ladder, but with one man, a ladder was safer; Newton testified that there was

no difference between the safety of a ladder and the safety of a scaffold; and Sowa testified that more of appellant's workmen were injured when they were using scaffolds than when they were using ladders.

Sowa, Johnson, Newton, Parker, Parsons, and Malenki all testified that it was the established practice, when working from and to the right of a ladder, to place the left arm around the stile of the ladder. Sowa testified that it was not improper to use a chisel as a lever in prying, but that its use was not customary, unless there was no other available way to pry. Parker testified that it was not the practice to use a chisel as a lever, but if used, then it should be used between the stiles of the ladder. Parsons testified that it was a matter of choice with the workman whether or not he used a chisel as a lever. Sowa testified that appellant did not have scaffolds until 1929, while Malenki testified that appellant had scaffolds before 1921. Sowa also testified that pictures were posted in the shop showing the correct use of a ladder.

In rebuttal, appellee testified that it was the practice in the shop to use a chisel as a lever; that he couldn't have used any lever except a chisel at the time of the accident because of the obstruction of the framework; that he had never been instructed to put his arm around the stile of the ladder and had never seen pictures showing such use as the correct use of a ladder; that he had never seen anyone use a chisel as a lever between the stiles; and that appellant had scaffolds before 1925. Witness Obstarczyk testified for appellee that he had worked one year and nine months as an apprentice carman in appellant's shop and that during that time he had never seen any carman or helper work with his arm around the stile of a ladder.

At the close of the evidence, appellant moved for a directed verdict which was denied. The jury found for appellee in the amount of $3,850, and judgment was rendered thereon. Appellant then brought this appeal.

The principal question presented involves the Montana Employers' Liability Act and its application. Rev. Codes of Mont., 1935, § 6605 provides: "Every * * * corporation operating a railroad in this state shall be liable in damages to any person suffering injury while he is employed by such * * * corporation so operating any such railroad * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such * * * corporation so operating such railroad, in or about the handling, movement, or operation of any train, engine, or car, on or over such railroad, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

Section 6606 provides that contributory negligence of the employee "shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee". Section 6607 provides that an employee "shall not be deemed to have assumed any risk incident to his employment, when such risk arises by reason of the negligence of his employer".

Appellant contends that appellee's injury did not result from "any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment". In Regan v. Montana Logging Co., 53 Mont. 153, 160, 161, 162 P. 388, 390, it is said that the language of § 6605 "is broad enough to include an injury to one employed in any capacity by another employé in the same or a different capacity in the accomplishment of any kind of service without which the complex process of operation cannot go on" and "that any part of the work connected with the railroad which necessarily and directly contributes to the operation of it, or the handling or movement of any train, engine, or car on or over it, comes within its scope". It is pointed out (53 Mont. at page 161, 162 P. at page 390) that some services "may be so remotely connected with the process of operation that it cannot by any intendment be deemed a part of it" and that each "case must be determined upon its own facts".

The broad language of the case just cited clearly indicates that the repair of "rolling stock" is within the terms of the act. 53 Mont. at page 160, 162 P. 388. If more were needed, reference to several other cases would be conclusive. In the case just cited, the loading of a car was held to be within the act. In Cornell v. Great Northern Ry. Co. et al., 57 Mont. 177, 187 P. 902, the operation of an engine used to hoist coal into coal docks and in pumping

water into a watertank was held to be within the act. In Wegge v. Great Northern Ry. Co. et al., 61 Mont. 377, 203 P. 360, the unloading of gravel from cars was held or assumed to be within the act. In Kamboris v. Chicago, etc., Ry. Co., 62 Mont. 88, 203 P. 859, the shoveling of cinders from track was held or assumed to be within the act. We hold the Montana act mentioned to be applicable here.

█ In view of that holding, we need not consider the question as to whether or not appellee was contributorily negligent, for by the express words of § 6606, contributory negligence is no defense to the action. Hall v. Northern Pacific Ry. Co. et al., 56 Mont. 537, 545, 186 P. 340; Kamboris v. Chicago, etc., Ry. Co., supra.

█ In this connection, appellant contends that there was a scaffold available when appellee was injured, and therefore no negligence was shown. It is said that the helper had ceased using his scaffold prior to the time when appellee was injured. In view of appellee's testimony that he was directed to use a ladder, it would not, we think, be more than contributory negligence on his part to fail to get the scaffold.

█ Finally, it is contended that appellee assumed the risk of his employment. See Matson v. Hines, 63 Mont. 214, 207 P. 474. Whether that case modifies § 6607,[1] it is here unnecessary to decide because the question as to assumption of risk is one which was to be decided by the jury. Great Northern Ry. v. Leonidas, 305 U.S. 1, 3, 59 S.Ct. 51, 83 L.Ed. 3. There was evidence that appellee was directed to do the work with a ladder by Kopetski. "Ordinarily, an employee has a right to assume that he may safely act under the direction of the foreman". Leonidas v. Great Northern Ry. Co. et al., 105 Mont. 302, 316, 72 P.2d 1007, 1011. In that case, the employee was carrying a tie, turned his ankle, fell, and was injured. It was held "that the hazard of carrying the tie was

[not] so open and obvious that plaintiff, as a matter of law, must be held to have assumed the risk of injury by yielding obedience to the command of the foreman". Considering the evidence of Kopetski's direction and the extensive use of ladders in the shop, we cannot hold as a matter of law, that appellee assumed the risk of his employment. We think the same rule applies to the contention that appellee assumed the risk in using a "simple tool". Compare Miller v. Granite County Power Co., 66 Mont. 368, 213 P. 604.

Affirmed.

---

[1] There is good ground for holding that assumption of risk of any kind is no defense under the act, if the risk arises by reason of the negligence of the employer as provided in § 6607. That statute differs from the federal statute corresponding to § 6607. The federal statute (45 U.S.C.A. § 54) bars the defense of assumption of risk only where violation by the carrier of any statute enacted for the safety of employees contributes to the injury.

Section 6607 is so much broader and bars such defense "when such risk arises by reason of the negligence of his employer". As said in Regan v. Montana Logging Co., supra, 53 Mont. 161, 162 P. 390: "The legislation is remedial in its nature, and its operation ought not to be limited by narrow construction". There seems to be no reason for reading a limitation into § 6607.